IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ROMAS J.[1], | : | Case No. 3:21-cv-00020 |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff previously filed an application for Supplemental Security Income (SSI) in September 2014. In October 2016, Administrative Law Judge Gregory Kenyon (ALJ Kenyon) determined Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. 9-3, PageID 109-30.) The Appeals Council declined to review ALJ Kenyon's determination, and Plaintiff apparently did not seek judicial review.

Plaintiff filed his current application for SSI in August 2018. Plaintiff's claim was denied initially and upon reconsideration. After a telephone hearing at Plaintiff's request, Administrative Law Judge Stuart Adkins (ALJ Adkins) concluded that Plaintiff was not eligible for benefits because he is not under a "disability" as defined in the Social

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.")

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This case is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 14), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 9).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since October 25, 2016.[2] He was forty-three years old on the date the application was filed. Accordingly, Plaintiff was considered a "younger person" for purposes of determining his entitlement to disability benefits. *See* 20 C.F.R. § 416.963(c). He has a "limited education." *See* 20 C.F.R. § 416.964(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9-2, PageID 53-69). Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 14), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period in this case begins on August 1, 2018. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

### III. STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

3

(citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S FACTUAL FINDINGS

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the regulations. 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since August 1, 2018, the application date.

Step 2: He has the severe impairments of "osteoarthritis of the knees status post right knee surgery, peripheral vascular disease, hypertension, leukocytosis, diabetes mellitus, congestive heart failure, obstructive sleep apnea, asthma, obesity, depression/bipolar disorder, schizoaffective disorder, posttraumatic stress disorder (PTSD), and a history of cannabis abuse."

He has the following nonsevere impairment: hyperlipidemia.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work, except he has the following limitations: "(1) never climbing ladders, ropes, or scaffolds; (2) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (3) frequently balancing; (4) occasional exposure to extreme heat, extreme cold, wetness, humidity, dusts, odors, fumes, and pulmonary irritants; (5) avoid unprotected heights and dangerous machinery; (6) no production-rate pace work or strict performance quotas; (7) occasional interaction with supervisors and coworkers; (8) no interaction with the general public; (9) no teamwork or tandem tasks; and (10) can tolerate occasional changes to a routine work setting defined as 1-2 per week."

He has no past relevant work.

| | |
|---|---|
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. |

(Doc. 9-2, PageID 57-69.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 69.)

## V.   LAW AND ANALYSIS

Plaintiff asserts two errors: (1) whether the ALJ reversibly erred in the application of res judicata principles to his current application, and (2) whether the ALJ reversibly erred in evaluating the medical evidence and his symptom severity. For the reasons set forth below, the undersigned finds that no error occurred in the instant case.

### A.   The ALJ Did Not Err in the Application of the Res Judicata Principles

In his first asserted error, Plaintiff contends that the ALJ failed to follow the dictates of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The undersigned disagrees.

#### 1.   *Res Judicata in the Sixth Circuit*

Res judicata principles apply to the Commissioner and Social Security claimants. *Drummond*, 126 F.3d at 841-42. The Sixth Circuit held in *Drummond* that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. Thus, "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.*

The Social Security Administration issued Acquiescence Ruling 98-4(6) to explain how to apply *Drummond* to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).

In *Earley*, the Sixth Circuit clarified the scope of *Drummond*. 893 F.3d 929. The Sixth Circuit explained that when a claimant files a subsequent application covering the same period as an earlier application, res judicata applies absent good cause to revisit the earlier determination. *Id*. at 933. Res judicata does not apply, however, when the subsequent application seeks benefits for a different period. *Id.* While an ALJ may not be bound by a prior ALJ's determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. Therefore, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

### 2. *Application of Res Judicata in this Case*

Here, the ALJ considered the effects of Plaintiff's prior application. He explained:

> The evidence of record now shows that [Plaintiff's] condition has changed since the issuance of the prior decision on October 27, 2016, which found that the claimant had the residual functional capacity to perform a reduced range of sedentary work. There is new and material

7

>  evidence documenting changes in the claimant's overall physical condition since the issuance of the prior decision. Therefore, the finding pertaining to residual functional capacity made in the prior final and binding decision is no longer entirely applicable and is not adopted herein pursuant to *Drummond* and AR 98-4(6) (as explained at Finding No. 4). The overall finding pertaining to the claimant's ability to do past relevant work made in the prior final and binding decision also is no longer applicable due to the passage of time, and is not adopted herein pursuant to *Dennard* and AR 98-3(6) (see Finding No. 5).

(Doc. 9-2, PageID 54.)

Plaintiff argues that while the ALJ purported to make a new determination, he essentially provided "a recycled version of ALJ Kenyon's 2016 RFC…" (Doc. 12, PageID 1449; Doc. 9-2, PageID 57.) He contends that since the ALJ identified new severe impairments, including peripheral vascular disease, hypertension, leukocytosis, and congestive heart failure, the ALJ's RFC should have been more restrictive than the RFC formulated by the prior ALJ. (*Id.*)

This argument fails because the ALJ's findings that Plaintiff's new impairments do not require additional limitations are supported by substantial evidence. For example, while initial lab work showed chronic leukocytosis, "repeat bloodwork was normal and no further hematology follow-up was recommended." (Doc. 9-2, PageID 58.) Although Plaintiff's records showed peripheral vascular disease, the "bilateral angiogram performed in March 2019 indicated no intervention was needed." (*Id.*) Plaintiff's blood pressure was "adequately to well-controlled on medical therapy." (*Id.*) And although Plaintiff was hospitalized due to onset of symptoms from congestive heart failure, that condition had been "adequately to well-compensated with diuretic therapy." (*Id.*)

8

Further, no medical opinion evidence supported including additional limitations in the RFC. To the contrary, state agency reviewing physicians Dr. Steve McKee and Dr. Bradley Lewis identified limitations that were consistent with a reduced range of light work. (Doc. 9-2, PageID 65.) The ALJ found these opinions only somewhat persuasive because "objective evidence of the claimant's cardiac, respiratory and orthopedic physical impairments warrants finding that light work is an overestimation of his physical capacity and supports reducing [his] exertional level to sedentary work." (*Id*.)

In sum, the ALJ properly applied *Drummond* and *Earley*, and Plaintiff's argument to the contrary is not well-taken.

### B. The ALJ's Findings Regarding Symptom Severity Are Supported By Substantial Evidence

Next, Plaintiff contends the ALJ wrongly downplayed the severity of his symptoms. (Doc. 12, PageID 1451.) More specifically, he alleges that the ALJ's stated reasons for finding his symptoms less severe are unsupported by substantial evidence.

#### *1. Evaluating Symptom Severity*

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon

9

objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;

  3.  Factors that precipitate and aggravate the symptoms;

  4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

  5.  Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

  6.  Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

  7.  Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

  The ALJ must determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider an individual's statements, keeping in mind that those statements may be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

  The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment

11

may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

### 2. *Plaintiff's Symptom Severity*

Plaintiff argues that the ALJ erred in evaluating his symptom severity. (Doc. 12, PageID 1451.) For example, he contends that the ALJ wrongly "downplayed the severity of [his] symptoms because 'weight loss and dietary changes' improved swelling in [his] legs and he had been more active with painting, landscaping, and 'plumbing on occasion.'" (*Id.*)

The Court concludes that the ALJ's analysis of Plaintiff's symptom severity complied with SSR 16-3p and, further, that the ALJ's findings are supported by substantial evidence. The ALJ thoroughly summarized Plaintiff's medical records and treatment history. (Doc. 9-2, PageID 64-67.) The ALJ then explained:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the extent of (physical and mental) limitation alleged is largely unsubstantiated by convincing objective medical evidence or clinical findings. The evidence generally does not support the alleged loss of functioning. Allowing for a reasonable recovery period after his second knee surgery, the claimant was eventually

12

> able to ambulate without an assistive device. He has a "history of intermittent noncompliance" (Exhibit B17F at 159), but when fully complaint with treatment many of the claimant's other conditions are at least adequately managed. Spirometric testing of record has been mild. Supplemental oxygen was prescribed only for use at night with his CPAP machine and on physical examination, both respiratory and cardiac findings have been normal, overall (Exhibits B1F at 6, 11, 43, 62, 67, 70, 74 /B3F at 11, 29 / B14F at 19 / B16F at 4 / B17F at 28, 146, 171 / B20F at 14 / B22F 17). The claimant continues to smoke (Exhibits B1F at 5, 57 / B16F at 1 / B17F at 22) which further undercuts respiratory complaints. Weight loss seems to be a significant factor affecting many of the claimant's physical conditions. With dietary changes and weight loss, he acknowledged feeling "rejuvenated" and "significantly" better with less swelling in his leg (Exhibit B1F at 60). He walked for exercise (Exhibits B17F at 117, 147), was more active with painting (Exhibit B1F at 79) and was able to work as a landscaper (Exhibit B1F at 9, 12, 20) and do plumbing on occasion (Exhibit B21F at 1). As for level of psychological functioning, the evidence documents that the claimant's symptoms are stabilized with consistent pharmacological management.

(Doc. 9-2, PageID 67.)

As required by SSR 16-3p, the ALJ determined that Plaintiff had several medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (*Id.*, PageID 67) The ALJ then considered the evidence in the record and concluded that the alleged extent of the mental and physical limitations was "largely unsubstantiated by convincing objective medical evidence or clinical findings." (*Id.*) The ALJ considered Plaintiff's subjective complaints and weighed abnormal findings against normal findings in the record. (*Id.*, PageID 65-67.) The ALJ considered Plaintiff's daily activities and the factors that precipitate and aggravate his symptoms. (*Id.*) Ultimately, the ALJ balanced Plaintiff's reported difficulties with his statements throughout the record of what he was able to do and concluded that the evidence did not support

13

Plaintiff's allegations of symptom severity. (*Id.*) The ALJ's evaluation of Plaintiff's symptom severity is supported by substantial evidence, and his analysis complied with SSR 16-3p.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 12) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

          */s/ Caroline H. Gentry*
          Caroline H. Gentry
          United States Magistrate Judge